### Gray *v.* McKeesport City, Appellant.

Argued April 28, 1938.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*Harry M. Jones,* City Solicitor, for appellant.

*J. Paul Farrell,* with him *Ralph J. McAllister,* of *McAllister & McAllister,* for appellee.

Opinion by Cunningham, J., October 6, 1938:

James H. Gray, plaintiff below and appellee herein, was a lieutenant on the police force of the City of McKeesport. He was suspended from duty and later

reinstated. Not having received his pay for the period of suspension, he brought suit in assumpsit. The trial judge affirmed his point for binding instructions and directed a verdict for the sum withheld, less three hundred dollars earned in another occupation. The court below, in banc, denied the city's motion for judgment n. o. v., deducted appellee's salary for the first month of his suspension, and entered a judgment against the city for $1,469.43, from which it has appealed.

McKeesport is a city of the third class, and proceedings relating to fining, suspending or discharging, members of its police department were, at the time of the present controversy, governed by the Act of June 20, 1917, P. L. 618, Sec. 6, as amended by the Act of May 17, 1919, P. L. 204, and further amended by the Act of July 11, 1923, P. L. 997. The provision reads as follows:

"All employes of said police department shall be subject to suspension by the superintendent of the department of public affairs for misconduct, or violation of any law of this commonwealth, any ordinance of the city, or regulation of the said police department, pending action by the city council upon the charges made against any such employes; and on hearing before the city council, where they may be represented by counsel, they may be fined or suspended for a period not to exceed thirty days, with or without pay, or they may be discharged by city council, if found guilty of the charges made against them: Provided, however, That the said superintendent of the department of public affairs may, for misconduct or violation as aforesaid, suspend any employe of said department of police for a period not to exceed ten days, with or without pay, without preferring charges and without a hearing of council: ......"

There is no substantial controversy in the testimony relative to the facts under which the suspension oc-

curred. On May 16, 1929, the mayor of the city was informed by the United States District Attorney that the federal grand jury had indicted appellee, along with certain other police officers, for conspiracy to violate the National Prohibition Act. Upon receipt of this information, the mayor prepared the following statement:

"Though fully conscious of the rule of law that entitles any person accused of crime to a trial by jury before they can be found guilty, yet I feel that when public officers are indicted on charges involving wrong doing in office, that in fairness to the public they should be suspended until their case is disposed of. The officers of this city included in the indictment are suspended until the disposition of the case."

The mayor then presented this statement to a meeting of city council the same afternoon and that body adopted the following resolution: "That in accordance with indictment by federal grand jury, and in accordance with the written statement of Mayor Lysle on the subject, the following named officers are suspended from duty until their cases have been disposed of ......"

Council conducted no formal hearing on the charges. On May 27, 1929, the mayor again appeared before council and asked, "Does council want to reconsider their action in the suspension of several of the police officers? If so, a motion is in order. If not, the matter will be considered closed." The minutes of council indicate that no member made any comment or motion, whereupon the mayor stated the matter was closed. A few minutes later, appellee, himself, appeared before council and stated he had come at the mayor's suggestion to take up the matter of his suspension. The mayor denied he had made any such suggestion and added that council had taken no action and the case was closed.

No further proceedings took place until at a meet-

ing of council on February 17, 1930, the mayor announced the officers had been tried and acquitted, and recommended their reinstatement; thereupon, a resolution to that effect was adopted by council.

We have concluded the judgment must be affirmed. It will be noted that, under the statute above quoted, there were three possible ways in which a police officer might be suspended for misconduct, or violation of any law, ordinance or regulation:

First, he might be suspended for a period of not more than ten days, with or without pay, without charges being preferred and without a hearing before council;

Second, he might be suspended pending action by council on charges preferred against him;

Third, after a hearing before council, that body might suspend him for a period of not more than thirty days, with or without pay.

We are not here concerned with the statutory provisions relative to the fining of police officers or to their dismissal upon conviction of charges.

It is clear that the suspension was not of the first type, since this is obviously intended to apply to minor offenses not requiring a hearing, and since the suspension was, by its own terms, "until [his case] has been disposed of." The city, however, insists that what in effect took place was a suspension of appellee by the mayor, pending a hearing by city council to be held after he was either acquitted or convicted on the federal charges brought against him; that the suspension was necessary and proper, in view of the indictment; and that the power of suspension carried with it a forfeiture of pay for the intervening period.

In order to simplify the issues, we may assume, without deciding the point, that the mayor had the right to suspend appellee and prefer charges in view of the circumstances; and we may also agree that the suspension would be effective until a hearing before council

was held, without being limited to any particular period of time. See *Zimmerman v. City of Lebanon et al.,* 320 Pa. 581, 184 A. 652. Even if these contentions be granted, they do not dispose of the question of appellee's right to recover the salary he would otherwise have been paid, at least for the period beginning one month after his suspension. It is not questioned that the mayor and council were fully advised that appellee was ready, willing and able, to perform his duties during the entire period of his suspension.

It should also be noted that in the case of a summary suspension for a ten day period, the act specifically provides that it may be with or without pay. Similarly, it provides that where the suspension is the act of city council, after a hearing, it may be with or without pay. In both of these cases, the suspending authority is empowered to determine whether the suspension shall be accompanied by a penalty of loss of salary.

In the case of a suspension pending a hearing before council, however, the act of suspension is not the final adjudication; it is merely a preliminary step authorized in the interests of a sound public policy and proper discipline. Where, however, the mayor or a department head elects to take such a step, he also elects to leave it to council to determine whether the employee shall be suspended for a period not exceeding thirty days, and if so, whether with or without pay. This not only seems to be the reasonable meaning of the provision, but is a construction fortified by the fact that in the case of such a suspension no power to deprive the accused employee of pay pending a hearing is conferred upon the mayor or department head.

In *Koester v. Philadelphia,* 46 Pa. Superior Ct. 110, 115, this court considered the effect of a similar section of the Act of June 1, 1885, P. L. 37, Article III, P. L. 42, which provided: "It shall be lawful for the director of the department of public safety at his dis-

cretion to suspend from duty before trial any person charged as aforesaid, until such trial can be had, with or without pay as such court shall afterward determine, but no trial shall be delayed for more than one month after charge made." The statute also provided that the findings of the trial court should be of no effect until approved by the mayor. The police officer involved in that case was suspended by the director of public safety pending trial, and was subsequently found guilty by the trial court. The court, however, made no ruling that the suspension should be without pay. It was there held that under that statute the police officer was entitled to his pay up to the time the mayor approved the findings and dismissed him. While that case is not entirely analogous, we think its principles are persuasive here.

It is not altogether clear from the record whether the action against appellee should be placed under the second or the third category above outlined; the city officials did not follow either method in strict accordance with the statute. We think, however, that this is immaterial because, under any view of the facts, no attempt was ever made to impose the penalty of loss of pay upon appellee. The mayor clearly was given no indefinite power of suspension without preferring charges to council; no such authority appears in the statute. Therefore, unless the suspension was, in effect, a suspension pending a hearing before council, it was not lawful and could not justify the withholding of appellee's pay.

If, on the other hand, the suspension should be treated as a suspension pending a hearing, it did not automatically carry with it a loss of pay. That was a matter for council to decide; but council never made any decision upon it. The initial action of council on May 16, 1929, even if it be considered regular, contained no reference to a loss of pay. In fact, the minutes of that meeting

carry a notation that one of the members of council asked the city solicitor whether the men might demand their pay for the period of suspension, if they were acquitted, to which question he replied in the affirmative. We do not mention this as being in any way binding upon either the city solicitor or upon council, but as indicating that the question of loss of pay was brought to the attention of council and at least held in abeyance. No further action was taken by council until the reinstatement of appellee and the other accused officers. Here again, nothing was done about pay. If the act of reinstatement is to be considered the equivalent of a hearing and final adjudication by council, and apparently it was, because council in effect adopted the findings of the federal jury, then we have a situation in which appellee has been entirely cleared of the charges brought against him, and again the question of pay did not arise.

Another factor to be considered is that even if the meeting of May 16th be considered as equivalent to a valid suspension by council without pay, the suspension and loss of pay could not, under the express terms of the statute, have been effective for more than thirty days. It is unnecessary to determine whether a forfeiture of pay, even for the thirty day period, was proper, because the court, in entering judgment, deducted thirty days' salary out of the amount claimed, and appellee has raised no objection to this action.

One further question remains to be discussed. The city contends that even if appellee is entitled to his back pay, the question should be raised in an action of mandamus and not in a suit in assumpsit. In support of this contention, it relies upon *Rush v. Philadelphia*, 62 Pa. Superior Ct. 80, in which case it was held that an employe who had been *dismissed* from the service could not maintain an action of assumpsit to recover salary allegedly due for the period intervening between

his suspension and discharge. The basis of that decision was that one claiming to have been illegally removed from an office could not try his title to the office in an action to recover salary incident thereto, but must first seek reinstatement by a direct action for that purpose. The present case, however, presents a different situation. Appellee was not dismissed from the service but merely *suspended*. Suspension does not deprive one of the title to his office, but merely precludes him temporarily from performing its duties. Furthermore, appellee's suspension was subsequently lifted; he never ceased to be a member of the police force of the city. The question of his title to his office, as that term is properly used, did not arise, and it cannot here be said that he was seeking indirectly to test a right which should have been established by mandamus. For the reasons stated, none of the assignments can be sustained.

Judgment affirmed.